UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHANNON C. ADAMSON and NICHOLAS ADAMSON,<br><br>        Plaintiffs,<br><br>    v.<br><br>PORT OF BELLINGHAM,<br><br>        Defendant. | CASE NO. C14-1804 MJP<br><br>ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant Port of Bellingham's Motion for Partial Summary Judgment. (Dkt. No. 24.) Having reviewed the Motion, Plaintiffs' Response (Dkt. No. 27), Defendant's Reply (Dkt. No. 30), and all related papers, the Court hereby DENIES the Motion as to admiralty jurisdiction as moot but GRANTS the Motion insofar as it asks the Court to apply Washington substantive law to Plaintiffs' negligence claim.

**Background**

This case involves personal injuries allegedly resulting from Defendant Port of Bellingham's negligence. (Dkt. No. 1 at 7.) Plaintiff Shannon Adamson was an officer aboard

the car ferry M/V Columbia ("the Columbia"), and was tasked with adjusting the passenger gangway leading from the port to the ship while the Columbia was docked at the Port of Bellingham. (Dkt. No. 1 at 2.) While she was on the gangway, it fell and Ms. Adamson was injured. (Id.)

The gangway (which Defendant calls the "passenger ramp") is owned by Defendant and is part of a steel structure permanently affixed to a pier extending from the land over the water. (Dkt. No. 24-1 at 2.) When a ferry arrives and is ready to load or unload passengers, the gangway can be lowered from its "lockout" position onto the deck, allowing passengers to embark or disembark. (Dkt. No. 24-1 at 4.)

After initially filing this suit in state court, where third-party defendant and owner of the ferry, the State of Alaska, was dismissed on sovereign-immunity-related grounds (a dismissal that is currently on appeal), Plaintiffs sought and received a dismissal without prejudice and re-filed this case in federal court (see Dkt. No. 23 at 1–2), citing diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (Dkt. No. 1 at 2.) Plaintiffs titled the Complaint "Complaint for Personal Injury and for Loss of Consortium" and the sole claim is labeled "Common Law Negligence." (Dkt. No. 1 at 1–2.) Plaintiffs also "pray for a joint and several judgment [. . .] as may be permitted under the General Maritime Law…" (Id. at 8.)

Defendant moves for partial summary judgment on maritime claims, arguing that because the gangway on which the injury occurred is permanently attached to a pier, it should be considered an "extension of land" and therefore is outside the scope of admiralty jurisdiction (and presumably not a maritime tort). (Dkt. No. 24 at 7.) Plaintiffs argue that the gangway should be considered part of the ship while it is being used "in preparation for a passenger-loading operation," and that the tort is therefore maritime in nature, or at minimum that whether the

gangway is part of the land or part of the ship is a genuine dispute of material fact. (Dkt. No. 27 at 2.)

**Discussion**

As an initial matter, the Court is mystified as to why the Parties devote so much time to admiralty jurisdiction, since it is clear that Plaintiffs wish to pursue their claims under diversity jurisdiction, as they are entitled to do regardless of the purported maritime character of their negligence claim. "The 'saving-to-suitors' clause establishes the right of a party to choose whether to proceed within the court's admiralty jurisdiction or general civil jurisdiction when both admiralty and non-admiralty federal jurisdiction exist." Wilmington Trust v. U.S. Dist. Ct. for Dist. of Haw., 934 F.2d 1026, 1029 (9th Cir. 1991); see also Victory Carriers, Inc. v. Law, 404 U.S. 202, 204 (1971) ("The saving-to-suitors clause allows claimants to pursue actions for maritime torts at law either in state courts or in federal courts pursuant to diversity jurisdiction."). The rule is clear that plaintiffs who have claims that could be heard at law or in admiralty may either designate their claims as admiralty claims under Federal Rule of Civil Procedure 9(h) or exercise their "historic option" not to invoke admiralty jurisdiction. See Fed. R. Civ. P. 9(h), Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987). Particularly to the extent that Plaintiffs maintain their request for a jury trial for their sole "common law negligence" claim (see Dkt. Nos. 1, 2), they have already chosen to proceed at law under the Court's diversity jurisdiction and the Court need not decide whether admiralty jurisdiction exists. Cf. Fed. R. Civ. P. 38(e) ("These rules do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h).").

However, substantive maritime law applies even under diversity jurisdiction if the claim qualifies as a maritime tort. See Bowoto v. Chevron Corp., No. C 99-02506 SI, 2006 WL

2455761, at *3 (N.D. Cal. Aug. 22, 2006) ("Although the clause allows a plaintiff to choose the forum in which it brings suit, if a claim is a maritime tort it is governed by the substantive rules of admiralty law regardless of whether the plaintiff chooses to invoke the court's admiralty jurisdiction.") (citing Mendez v. Ishikawajima-Harima Heavy Indus. Co., Ltd., 52 F.3d 799, 800 (9th Cir. 1995)). The Court therefore assumes that Defendant desires the Court to grant summary judgment as to the maritime character of Plaintiffs' claims rather than on the irrelevant question of admiralty jurisdiction.

I. Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the movant meets this initial burden, then the burden shifts to the non-moving party to "designate specific facts" showing that there is a genuine issue of material fact for trial that precludes summary judgment. Celotex Corp., 477 U.S. at 324. An issue of fact is "genuine" if it can reasonably be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." Id.

II. Maritime Tort

The operative question here is whether Plaintiffs' "common law negligence" claim qualifies as a maritime tort outside of admiralty jurisdiction. This analysis depends on case law discussing admiralty jurisdiction (because often jurisdiction turns on the contours of a proposed maritime tort). The Ninth Circuit has identified a test for maritime torts outside or prior to application of the Admiralty Extension Act, which concerns admiralty jurisdiction: "First, the

tort must occur on or over navigable waters; this is the 'locality' or 'situs' test. Second, the actions giving rise to the tort claim must 'bear a significant relationship to traditional maritime activity.' This is the 'nexus' or 'relationship' test." Taghadomi v. United States, 401 F.3d 1080, 1084 (9th Cir. 2005) (citations omitted); cf. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995) ("A court applying the location test must determine whether the tort occurred on navigable water <u>or whether injury suffered on land was caused by a vessel on navigable water</u>.") (citing the AEA, 46 U.S.C. § 30101) (emphasis added). Defendant does not contest the "relationship" test (which, as Plaintiffs note, has two components), so the only question is whether this tort occurred "on or over navigable waters."

      A.      Gangway Locality

Plaintiffs argue that because Ms. Adamson's injuries occurred on a gangway, the locality test is satisfied. (Dkt. No. 27 at 6.) Defendant argues that the gangway is in fact a ramp "permanently affixed" to the pier and therefore an extension of the land. (Dkt. No. 24 at 9.) The Ninth Circuit has acknowledged that the characterization of a ramp as "more like a gangway" or "more like [. . .] a dock or pier" can raise genuine issues of material fact. See Scheuring v. Traylor Bros., Inc., 476 F.3d 781, 789 (9th Cir. 2007).

Whether a tort is maritime depends on the "locality of the injury." See The Admiral Peoples, 295 U.S. 649, 651 (1935). Piers and docks are deemed "extensions of the land," and injuries upon them do not give rise to maritime torts. Id. at 206–07. "The gangplank has served as a rough dividing line between the state and maritime regimes." Id. at 207. A gangway is considered part of the vessel when it is "part of the vessel's equipment which [is] placed into position to enable its passengers to reach the shore." See Admiral Peoples, 295 U.S. at 651–52. In finding maritime jurisdiction over a gangway in Admiral Peoples, the Supreme Court

emphasized that the gangway was the ship's "facility" and cited another case in which jurisdiction was proper where the injury took place when the plaintiff was "under the control of an instrumentality of the ship." Id. at 653–54 (citing L'Hote v. Crowell, 54 F.2d 212, 213 (5th Cir. 1931)).

When an injury occurs on a permanent, fixed structure, it is not a maritime tort. See, e.g., Whittington v. Sewer Const. Co., Inc., 541 F.2d 427, 432 (4th Cir. 1976) (no maritime tort when a man was injured while being lowered from a bridge onto a river barge); see also Bible v. Chevron Oil Co., 460 F.2d 1218, 1220 (5th Cir. 1972) (no maritime tort for injury that occurred on an offshore drilling platform). The locality test excludes "accidents on piers, jetties, bridges, [and] even ramps or railways running into the sea." Rodrigue v. Aetna Cas. & Sur. Co., 395 U.S. 352, 360 (1969).

Plaintiffs are correct that in cases such as Romero Reyes v. Marine Enters. Inc., 494 F.2d 866, 870 (1st Cir. 1974), courts have found the locality test satisfied where injuries occurred on or because of gangplanks or other pieces of equipment (such as ramps and ladders) providing ingress and egress to vessels. However, in these cases the claims were generally brought against the vessel or owner and the rationale was based on a vessel's duty to provide a safe means of entering and exiting the ship. See, e.g., id. (extending duty-based reasoning to a negligence claim in addition to a seaworthiness claim); The Shangho, 88 F.2d 42, 42 (9th Cir. 1937) (upholding jurisdiction over a tort case brought against ship where the injury occurred on a gangplank); Sarauw v. Oceanic Nav. Corp., 655 F.2d 526, 528 (3rd Cir. 1981) (finding duty of care on the part of a vessel with respect to a gangway supplied by a stevedore where it was the only means of embarking and disembarking). Here, Plaintiffs have not brought claims against the vessel. It should be noted that this case is in a unique posture because the Port's third-party complaint

against the vessel's owner, the State of Alaska, was dismissed by the state court on sovereign immunity-related grounds; furthermore, the Port now offers to dismiss its defenses alleging Alaska's negligence. (See Dkt. No. 7 & Exs. F–N; Dkt. No. 30 at 4.) But the absence of a claim against the ship is not the only factor distinguishing this case from other cases where courts have found the locality test was satisfied.

In applying the locality test, courts also focus on whether the structure on which the injury took place was permanently attached to the land. See, e.g., Bessey v. Carnival Cruise Lines, 579 F.Supp.2d 1377, 1378 (S.D. Fla. 2008) (distinguishing Admiral Peoples from situation where injury occurred on a "gangway on which passengers boarded or disembarked [which] was permanently affixed to the Port of Miami"); Parker v. South Louisiana Contractors, Inc., 537 F.2d 113, 115 (5th Cir. 1976) ("[T]he ramp in the present case rested on land, and removing it would involve a major undertaking calling for heavy equipment. Unlike a gangplank, it cannot reasonably be conceived as an appurtenance of the barges that use it for docking.") (citations omitted); Caldaro v. Baltimore & O. R. Co., 166 F. Supp. 833, 836 (E.D.N.Y. 1956) (emphasizing while finding maritime jurisdiction over a gangway that "[n]o part of the gangway was a fixed or permanent part of the dock"); Vega v. United States, 86 F. Supp. 293, 293–94 (S.D.N.Y. 1949) (finding the locality test was not satisfied where "[t]he platform on which libellant slipped and fell was not a part of the [vessel], nor attached to it. It was nailed and bolted to the pier. In contemplation of the law it is 'to be deemed an extension of the land.'"). Plaintiffs' attempt to cast Bessey into doubt on the ground that it conflicts with Vierling v. Celebrity Cruises, Inc., 339 F.3d 1309 (11th Cir. 2003), is unavailing: Vierling concerned a movable gangway which was placed between a land-based passenger bridge and the ship; indeed, the injury occurred when the gangway separated from the bridge. See id. at 1311 & n.5.

Because Plaintiffs are not bringing claims against the vessel, which might otherwise owe a duty of care to its employee with respect to a means of embarking and disembarking, and/or because the piece of equipment on which the injury occurred in this case was permanently affixed to the pier, Plaintiffs cannot satisfy the locality test prerequisite to a maritime tort.

### B.     Damage to the Vessel

Plaintiffs argue the locality test is met because when Ms. Adamson was injured, the gangway fell onto the Columbia. (Dkt. No. 27 at 12.) Thus, Plaintiffs argue, she was injured in the commission of a maritime tort against the Columbia. (Id.) Because Alaska is not bringing claims in this action, this argument is purely hypothetical and does not suffice to render the claim here a maritime tort.

### C.     Admiralty Extension Act

Plaintiffs argue that, even if the gangway is considered part of the land, the case still satisfies the locality test under the Admiralty Extension Act ("AEA") based on the Port's assertion of maritime claims against the State of Alaska in state court and affirmative defenses based on the State of Alaska's alleged negligence here. (Dkt. No. 27 at 13–19.) The AEA extends maritime "jurisdiction" to include "injury or damage [. . .] caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." 46 U.S.C. § 30101(a). By its terms, this jurisdictional statute does not affect the maritime character of torts brought pursuant to diversity jurisdiction. Even if the existence of jurisdiction mattered, jurisdiction normally turns on the well-pleaded complaint, not counterclaims or affirmative defenses; furthermore, a defendant as well as a plaintiff has the option to proceed under diversity jurisdiction even where admiralty jurisdiction exists. Cf. Wilmington Trust v. U.S. Dist. Ct. for Dist. of Haw., 934 F.2d 1026, 1030–31 (9th Cir. 1991) ("[A] plaintiff's [. . .] election to proceed

in admiralty via a Rule 9(h) designation does not affect another party's right to a jury. Therefore, a defendant may also proceed within the court's general civil jurisdiction under the saving-to-suitors clause.") (citations omitted). Plaintiffs fail to explain how the AEA could affect the maritime nature of their claims under diversity jurisdiction, and the Court declines to extend the statute in this manner.

The Court acknowledges that the Port now asks the Court to dismiss any maritime defenses. (Dkt. No. 30 at 4.) Because where Washington law applies, comparative negligence analysis is compulsory under RCW 4.22.070, the Court declines to strike the Port's affirmative defenses at this time. Cf. Humes v. Fritz Cos., Inc., 125 Wn. App. 477, 491 (2005) (Native American tribe's sovereign immunity does not bar allocation of fault under RCW 4.22.070).

**Conclusion**

The Court DENIES Defendant's Motion as to admiralty jurisdiction because it is moot in light of Plaintiffs' failure to invoke admiralty jurisdiction but GRANTS the Motion insofar as it asks the Court to apply Washington as opposed to maritime substantive law because Plaintiffs' claim does not satisfy the locality test for a maritime tort.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 6th day of August, 2015.

*[signature]*
Marsha J. Pechman
Chief United States District Judge